## KUHN et ux. v. PALO DURO CORPORATION et al.

### No. 5783.

Court of Civil Appeals. of Texas. Texarkana.
May 21, 1941.

Rehearing Denied May 29, 1941.

Underwood, Harben & Warren, of Marshall, and Shead & Smith, of Longview, for appellants.

Abney & Caven, of Marshall, Gerald C. Mann, Atty. Gen., and Geo. W. Barcus, Asst. Atty. Gen. for appellees.

JOHNSON, Chief Justice.

█ At a former day of the present term of this court we sustained appellees' motion to dismiss the appeal in this case, because the judgment entered and appealed from did not appear to be final, in that it did not show disposition of one of the defendants, A. T. Brannon. Subsequently appellants filed their motion to set aside the order of dismissal and to reinstate the cause on the docket of this court, showing by supplemental transcript that said defendant, A. T. Brannon, had in fact been properly dismissed from the cause by order of the court prior to the trial, and that entry of the judgment had been corrected in the particular complained of by an order nunc pro tunc. The motion to reinstate the original appeal on the docket of this court was granted by setting aside the order of dismissal. The cause is now properly before this court for disposition upon its merits. De La Moriniere v. Sam, Tex. Civ.App., 8 S.W.2d 312; Panhandle Const. Co. v. Lindsey, 123 Tex. 613, 72 S.W.2d 1068.

The suit is by M. A. Kuhn and wife, Violet Kuhn, against Palo Duro Corporation, W. T. Taylor, individually and as president of the Palo Duro Corporation, James C. Jones and A. T. Brannon, seeking to recover actual and exemplary damages alleged to have resulted from being unlawfully and forcefully dispossessed by defendants of certain premises in which plaintiffs lived and operated a business, and because of alleged false imprisonment of plaintiff Mrs. Kuhn by defendants February 26, 1939.

By their first amended original petition on which the case was tried, plaintiffs in substance allege that on February 26, 1939, they were lawfully in possession of a certain building in Caddo Lake State Park, in which plaintiffs lived and operated a cafè; that plaintiffs were lawfully in possession of the premises by virtue of a written contract with the Palo Duro Corporation, which contract did not expire until April 30, 1939, said Palo Duro Corporation having leased same from the State Parks Board of Texas; that plaintiffs' contract was taken from their possession without their knowledge or consent on or about June 6, 1938, by W. T. Taylor, president of Palo Duro Corporation; that in the early afternoon of February 26, 1939, pursuant to a conspiracy entered into by and between the defendants and each of them,

and by the use of force, threats and firearms, defendants James C. Jones and A. T. Brannon unlawfully and maliciously ejected and dispossessed plaintiff M. A. Kuhn from said premises; that plaintiff Violet Kuhn was by said defendants locked up in said building and unlawfully restrained of her liberty from February 26, 1939, to and including March 1, 1939; that plaintiffs suffered great humiliation, mental distress and pain as well as loss of profits to their business. Plaintiffs prayed judgment for $3,000 actual damages alleged to have resulted from being dispossessed of the premises; $10,000 damages for false imprisonment of Mrs. Violet Kuhn; and for $5,000 exemplary damages. The defendants Palo Duro Corporation and W. T. Taylor answered by plea in abatement, general demurrer, special exceptions, general and special denials. The defendants James C. Jones and A. T. Brannon answered by general demurrer and a general denial. Before proceeding to trial, A. T. Brannon died and was dismissed from the suit.

Upon trial of the case the evidence, in substance, shows that Caddo Lake State Park consists of several hundred acres of land in Harrison County on which buildings and equipment are constructed for recreational purposes, which buildings and equipment the Parks Board had leased for concessionary purposes to Palo Duro Corporation for a term beginning February 15, 1937, and ending February 15, 1942; that said Corporation had sub-leased the premises to M. A. Kuhn and wife, Violet Kuhn, in December 1937. Kuhn and wife testified that the contract did not expire until April 30, 1939. They further testified to facts from which they sought to have the inference drawn that Taylor had in their absence withdrawn the contract from their files in the building. Taylor testified that he was president of the Palo Duro Corporation and that the only written contract that said Corporation had ever executed leasing said premises to Kuhn and wife was for the period beginning December 22, 1937, and ending January 15, 1938, and that thereafterwards Kuhn and wife had operated the premises under verbal agreement on a month-to-month basis. It is further shown that on July 28, 1938, the State Parks Board notified Mr. Taylor who in turn notified Kuhn that complaint had been made that Kuhn was operating the place in "an untidy and uninviting

manner and that his prices for cold drinks were too high," and that unless such conditions were improved a change would be made in management; that on January 4, 1939, Taylor notified Kuhn in writing to vacate the premises on or before January 28, 1939; that upon Kuhn's failure to comply with the notice the Palo Duro Corporation filed a forcible detainer suit against him in the Justice's Court at Waskom, which suit was transferred to and is still pending in the Justice's Court at Marshall; that after said suit was transferred to Marshall, Taylor notified the State Parks Board that it would be "some time" before Kuhn could be legally dispossessed. On February 25, 1939, Wm. J. Lawson as executive secretary of the State Parks Board wired James C. Jones, an employee of said State Parks Board, to close the Caddo Lake State Park. Jones and Taylor met at Huntsville and from there proceeded by automobile to Marshall where Jones employed A. T. Brannon to assist him in closing the Park. On Sunday, February 26, 1939, Jones, Brannon and Taylor drove from Marshall in an automobile together. Taylor got out of the car at Karnack, about one mile from the Park, and Jones and Brannon proceeded to the Park, arriving at the main building in which M. A. Kuhn and wife, Violet Kuhn, lived and operated a cafe, about 1:30 p. m., at which time the Kuhns were serving meals to a number of guests, including men with their families. Jones and Brannon ordered Kuhn and wife off the premises and immediately began closing the building. There is testimony that Brannon was abusive, cursing and brandishing a pistol. Brannon by deposition denied having a pistol with him at that time. Mr. Kuhn and the guests vacated the premises. Mrs. Kuhn refused to do so. Jones and Brannon proceeded to nail up the windows and some of the doors and put padlocks on the other doors, thus securely locking Mrs. Kuhn inside the building. They offered to let her out if she would leave the premises. After they locked Mrs. Kuhn in the building, Brannon and Jones went back to Marshall. Brannon testified that he remained in Marshall a short while only before going back to the Park; that he went to Marshall to get some groceries and his pistol. The evidence shows that Brannon continued to guard the premises in which Mrs. Kuhn was confined. He admitted being armed while guarding Mrs. Kuhn in the building. The testimony both of Brannon and of Jones shows that neither had any character of writ or court order authorizing them to dispossess Kuhn and wife of the building.

Trial of the case to a jury resulted in the following findings of fact: (1) That plaintiffs, M. A. Kuhn and wife, Violet Kuhn, did not have a written contract with W. T. Taylor or the Palo Duro Corporation to operate the concessions at Caddo Lake State Park until April 30, 1939; (3) that M. A. Kuhn and wife had sustained no loss of profits from February 26, 1939, to April 30, 1939, by reason of the breach of said contract; (4) that James C. Jones, A. T. Brannon, W. T. Taylor, and the Palo Duro Corporation entered into a conspiracy prior to February 26, 1939, to dispossess and oust M. A. and Violet Kuhn from said premises; (5), (6), (7) and (8) that Violet Kuhn was not falsely imprisoned by Jones or Brannon or Taylor or the Palo Duro Corporation, on or about February 26, 1939; (9) when asked what amount of money if now paid in cash would be reasonable and adequate compensation to Violet Kuhn for the damages, if any, suffered by reason of the false imprisonment, if any, the jury answered "None"; (10) when asked "What amount of exemplary damages do you find in favor of the plaintiffs against the defendants?" the jury answered $600; (11) that the acts committed by Jones and Brannon were done as agents of the State Parks Board and not as agents of Palo Duro Corporation and W. T. Taylor; (12) that Jones did not act solely under orders and instructions of the State Parks Board in closing said Park; (13) that Brannon did not act solely under orders and instructions of the State Parks Board in closing said Park; (14) that Jones did not procure the services of Brannon solely in behalf of the State Parks Board; (15) that neither Brannon nor Jones compelled Violet Kuhn to remove from the building; (16) that neither Brannon nor Jones prevented Violet Kuhn from removing from the building; (17) that neither Brannon nor Jones compelled Violet Kuhn to remain in the building; (18) that Violet Kuhn could have by use of ordinary means gotten out of the building; (20) that Jones was carrying out the instructions of the State Parks Board in closing said Park; (21) that Jones did not act within the scope of his employment in closing said Park; (22) that Brannon was an employee of the State

Parks Board on or about February 26, 1939; (23) that Brannon was carrying out the instructions of the Parks Board in closing said Park; (24) that Brannon was not acting within the scope of his employment in closing said Park; (25) that Brannon did not act solely under orders and instructions of said Parks Board in closing said Park; (26) that Jones did not act solely under orders and instructions of said Parks Board in closing said Park.

Upon findings of the jury the court entered judgment that plaintiffs take nothing against the defendants James C. Jones, W. T. Taylor and the Palo Duro Corporation. The plaintiffs duly filed their motion and amended original motion for new trial, against which a general demurrer was sustained and the motion overruled. Plaintiffs have appealed.

■ Appellants' first proposition complains of the action of the trial court in sustaining a general demurrer to their motion for new trial. We believe the proposition is sound. The order of the court sustaining a general demurrer to appellants' motion for a new trial has the effect of conceding the truth of the allegations therein contained. The verity thus accorded extends to every reasonable intendment indulged in favor of the sufficiency of a motion, aided by such essential facts as may be fairly inferred from the facts expressly alleged therein. 33 T.J. 553, § 120. The motion contains many alleged grounds for a new trial, among the more serious are the following. Paragraph 7-a of the motion alleges that one of the jurymen left the other eleven jurors in the jury room and communicated with the court. R.C.S.1925, Article 2197, provides: "The jury may communicate with the court by making their wish known to the officer in charge, who shall inform the court, and they may then in open court, and through their foreman, communicate with the court, either verbally or in writing." In Scroggs v. Morgan, 133 Tex. 581, 130 S.W.2d 283, 286, it is said: "The matter is not one in which the court may be guided by what it may deem the 'spirit of the law.' Reversible error is presumed from violation of the statute." In other portions of the motion for new trial jury misconduct is alleged. In substance it is claimed that the jury arrived at their verdict by lot as to the amount of actual damages to which plaintiffs were entitled, that each juror set down the amount of actual damages which he thought should be given plaintiffs. The amounts were added and divided by twelve, the average being $200; that the jury agreed upon $400 to be assessed as exemplary damages; that one or more of the jurors not wanting to give any damages, and knowing the effect thereof, caused the actual damages and exemplary damages to be added together and placed the sum $650 in answer to the question inquiring as to the exemplary damages, and "None" as to actual damages, instead of separating the two amounts and placing them in answer to each of the respective questions making inquiry as to actual and exemplary damages.

■ Aside from the legal effect of sustaining the general demurrer to plaintiffs' motion for new trial, it is claimed in appellants' proposition No. 6 that the motion should have been sustained and a new trial granted on the grounds alleged therein that the answer of the jury to certain special issues were not supported in the evidence, among them being Nos. 5 and 6, in response to which the jury found that defendants Jones and Brannon did not falsely imprison Mrs. Kuhn as that term was defined by the court. Clearly the answers of the jury to special issues Nos. 5 and 6 were contrary to all the testimony, including the testimony of defendants Jones and Brannon. Their testimony is to the effect that they would not have locked Mrs. Kuhn up if she had obeyed their orders to immediately get off the premises, and that they would have released her at any time (except while Brannon was gone to town after his pistol) if she had promised to leave the premises. Attaching such unlawful conditions as a reason for their false imprisonment of Mrs. Kuhn did not render Jones and Brannon any the less guilty. Assuming that the lease contract of Kuhn and his wife had expired and that their lessors had a better right to the present possession of the premises, it was Mrs. Kuhn's home and place of business containing their household goods and merchandise of the value of several thousand dollars, which the law did not require her to deliver into the hands of strangers. She was undisputedly in the quiet and peaceable possession of the premises. The law in its effort to prevent violence and to maintain peace has prepared adequate remedies to restore possession to the party rightfully entitled thereto. In no circum-

stances can such party resort to the strong hand of force, violence or terror to dispossess one having peaceable possession. 19 T.J. 764, § 6.

The judgment is reversed and the cause remanded.